## Pitcairn *v.* The Homewood Cemetery, Appellant.

*Cemeteries—Estate in lots—Fee simple estate—Deed—Base or determinable fee—Location of mausoleum—Managers—License—Easement.*

1. Where, by the terms of purchase of a cemetery lot, the use of the lot is limited to the burial of the dead, and the purchaser is forbidden to erect improper improvements, or to transfer or assign the lot without the approval of the cemetery company, and holds the lot subject to the rules and regulations of the board of managers, and there is no restriction upon the power to devise the lot by will or preventing its descent according to the laws of inheritance, the estate in the lot vesting in the purchaser is an estate in fee with restrictions, as to alienation and use, but is not a determinable or base fee, nor is it a mere license or easement.

2. In such case the inherent discretionary powers of the board of managers cannot be asserted to prevent the location by the owner of a mausoleum on one side of the lot instead of in the center, in the absence of a prohibition in the deed or of a by-law, rule or regulation giving the board control over such locations.

Argued May 4, 1910.  Appeal, No. 107, Oct. T., 1910,

by defendant, from decree of C. P. No. 4 Allegheny Co., First T., 1910, No. 127, granting injunction in case of Elizabeth E. Pitcairn, individually, and Elizabeth E. Pitcairn, executrix, v. The Homewood Cemetery Company. Before FELL, C. J., BROWN, POTTER, ELKIN and STEWART, JJ. Affirmed.

Injunction to restrain defendant from preventing erection of a mausoleum. Before SWEARINGEN, P. J.

The facts appear in the opinion of the trial court, which was in part as follows:

The plaintiff claims the right to erect a mausoleum on one side of her lot in the defendant's cemetery, in which to place the remains of her deceased husband. She claims this right, both by reason of her ownership of said lot, and by reason of her sentiment against the disturbance of the grave of her daughter's deceased husband, whose remains have already been interred in said lot. The defendant objects to the location of said mausoleum, elsewhere than in the center of said lot, for the reasons, that the location desired by the plaintiff would tend to mar the symmetrical and general improvement of said cemetery, and that the said location would injuriously affect neighboring properties. Between these contentions we must decide according to the rights of the parties, as defined by law.

What is the interest of the plaintiff in this lot? For surely there can be no doubt that whatever interest Robert Pitcairn had in it passed by his will to Elizabeth E. Pitcairn, his widow. The conveyance is, in terms, of the lot itself, not of a mere interest therein. The deed is for the consideration of $9,000, and purports to "grant, bargain, sell and convey," said lot to "Robert Pitcairn, his heirs and assigns," to have and to hold the same to him, "his heirs and assigns forever," subject to the conditions, etc., "specified in the rules and regulations hereto annexed," together with a warranty. Thus the language of this deed is the ordinary and necessary language used

in a conveyance by deed of a fee simple. Apt words of inheritance are used, the "heirs" inherit generally, without restriction to any particular heirs, and forever. Yet the estate, which passed to Robert Pitcairn, was not a fee simple absolute. Many writers use the term "fee simple absolute," though there is an apparent agreement that the word "absolute" adds nothing to the description of the estate. It is all contained in the words "fee simple." What we mean is that the estate is a restricted one. By the terms of the deed itself, the lot is to be held subject to the rules and regulations annexed. Thereby, the use of the lot is limited to the use of the burial of the dead. The purchaser cannot erect improper improvements, he cannot transfer or assign the lot without the consent of the defendant, and he holds the lot subject to the rules which may from time to time be adopted by the board of managers. Under the law there can be no partition of the lot: Love v. Robinson, 219 Pa. 469. But there is no restriction upon the power of the owner to devise the lot by will, nor is there any restriction which will prevent its descent according to the law of inheritance.

Hence we conclude that the estate which vested in Robert Pitcairn, by virtue of said deed, is more than was acquired by the conveyances, considered in Kincaid's App., 66 Pa. 411, in Hancock v. McAvoy, 151 Pa. 460, and that line of cases. But it can hardly be regarded as a determinable or base fee, which is one that may be terminated abnormally. An estate created by deed, in which there is a prohibition against following certain lines or business upon the land, has never been regarded as a base fee. "A base fee is in no way distinguishable from an absolute fee simple, except by the liability to an abnormal termination:" 2 Blackstone's Commentaries, p. 109. The estate which Robert Pitcairn took is not liable to an abnormal termination. It goes to his heirs generally without limit in duration; and there is no provision for a forfeiture or reversion. In case of a breach

of any of the conditions upon which it is held, the remedy is by proceeding in equity to enjoin the unlawful act of the owner.

We hold, therefore, that the estate which Robert Pitcairn took was a fee, restricted as to alienation generally and as to use, and it is to be held subject to the rules and regulations contained in the deed and to those which may be adopted in a lawful way: Mount Moriah Cemetery v. Com., 81 Pa. 235; Rosehill Cemetery Co. v. Hopkinson, 114 Ill. 209 (29 N. E. Repr. 685).

We are thus unable to agree with the defendant that Robert Pitcairn acquired but a license or easement in the lot aforesaid.

If the foregoing be correct, then it follows from the nature of the estate that the plaintiff has the right to erect her mausoleum in any portion of said lot, unless there is some prohibition in the deed aforesaid, or in some rule of the defendant corporation. And this would be true whether we regard the estate as a fee simple or as a base fee. There is nothing in the deed, regulating the place where an owner may locate a sepulchral structure upon his lot. It is not pretended that any rule upon the subject was ever adopted by the board of managers, subsequent to the date of the deed and prior to the contract between the plaintiff and the C. E. Tayntor Granite Company, or even prior to the filing of the bill.

Under clause II of the rules and regulations of said deed, said lot can only be used as "a place of burial for the dead." The Century Dictionary defines "burial" as: "The act of depositing a dead body in any place where it is intended to remain." Consequently the plaintiff has the right to deposit the remains of Robert Pitcairn in or upon this lot, where they are intended to remain permanently. "A mausoleum is really nothing more than a grave above ground:" People v. Richards, 108 N. Y. 237.

Under clause III of said rules and regulations, "The proprietor of said lot shall have the right to erect proper stones, monuments or sepulchral structures."

We cannot think that the mausoleum which plaintiff intends to erect is other than a "sepulchral structure." Besides, the defendant has recognized it as such a structure by its approval of the plans which the plaintiff had prepared for the construction of the same. The board of managers is given a clear right to control the character of such structures, and there is no dispute about that. The only dispute is as to the location.

As we have stated, no by-law, rule or regulation was produced, giving to the board of managers control over the location of a mausoleum upon an owner's lot. The defendant, however, contends, that, irrespective of any by-law or rule, there is a general discretion vested in the board to prohibit the erection of structures which, by design, character or location, will interfere with the symmetry and general plan of improvement and will injuriously affect adjoining properties. It will be observed that this proposition assumes that, according to the evidence, the proposed location of the mausoleum will interfere with the general plan of improvement and will injuriously affect adjoining properties. We do not think that either of these assumptions has been clearly established by the evidence. We do not doubt that the improvement of a cemetery upon exact symmetrical lines would appeal to a skilled engineer and to many others besides. It may be that some lot holders will think that, because the plaintiff's mausoleum will not be in exact alignment with the others, their properties will be injured. But, on the other hand, there are doubtless many people who would prefer variety in such improvements. However that may be, the evidence upon the subject, coming from such respectable sources as it did, was but the opinions of the witnesses. While those opinions might have been controlling in inducing the board of managers to take action upon the subject, yet, until the board does take action in the ordinary and lawful way, those opinions cannot be allowed to interfere with the vested rights of this lot owner to do what is not prohib-

ited. If the proposition of the plaintiff involved the doing of something contrary to the very purpose of a cemetery corporation, then we could understand how the inherent discretionary powers of the board might be invoked to prevent it. This was the case in St. Peter's Church v. Bean, 15 Pa. Dist. Rep. 636, where the owner of a lot attempted to bury a pet dog in his lot and to erect a monument at the grave. But, where the proposition of the plaintiff involves the erection of a sepulchral structure, a right which is expressly granted, and the location of it upon one side of her lot, a right which has not been prohibited by corporation action, we are unable to see how the inherent discretionary powers of the board can be asserted against her proposition.

But, it is argued by the defendant, the board of managers did take action. It required every lot holder in this section to erect mausoleums in the center of their lots. In the case of James R. Mellon, the evidence does show that to be true, and his mausoleum was erected very near the center. The "Order for Foundations" contains the clause, "Some one must designate where the foundation is to be built. . . . Location subject to superintendent's approval." And now, when the plaintiff undertook to erect her mausoleum, the board did take action, by refusing to permit her to erect it elsewhere than in the center of her lot. All of this, the defendant contends, amounts to the establishment of a rule upon the subject, and a formal minute upon the book would be only evidence of the rule. Is this the law?

It is not pretended that any by-law was ever enacted by the corporation upon the subject. As has been stated, the board of managers never did adopt any rule upon the subject of locating sepulchral structures. Has the board power to take action upon such a subject, otherwise than by the adoption of a rule applicable to all lot holders similarly situated, in a regular session, and by having the same evidenced by a formal minute thereof? We do not think it has. To hold the contrary would be the sub-

stitution of uncertain, arbitrary action for certainty and uniformity. The board can only take effective action in the making of rules, binding upon all lot holders, in the manner prescribed by law. Our view is well stated in the case of Rosehill Cemetery Co. v. Hopkinson, cited supra.

"If the board have authority under the charter to prevent a lot owner from erecting a vault upon his lot, that power can only be exercised by the adoption of a general rule upon the subject which will be applicable to every one. . . . As said before, in the absence of a general rule prohibiting the erection of vaults by all, the board of managers had no power to establish a rule which would govern this particular case."

The regulation inserted in the "Order for Foundations" that the location of foundations is subject to the superintendent's approval, cannot, in our opinion, avail the defendant. There was no evidence that this order was ever made known to Robert Pitcairn, or to the plaintiff prior to the making of her contract. Such a provision to be effective must have been grounded upon some rule adopted by the board of managers. When inquiry was made for such authority, the only minute produced was that of June 9, 1889, as follows:

"Plans and specifications for all monuments and headstones must be submitted to the superintendent for approval."

But this gives no authority for requiring the location of a sepulchral structure to be approved by anyone. It is authority for requiring the plaintiff to submit her plans for approval; and that she has done, and they have been approved.

Assuming then that the action of the board of managers, in refusing permission to the plaintiff to erect her mausoleum where she desired, was in effect the adoption of a rule upon the subject, how can such a rule be held binding upon her? The said refusal was made on October 12, 1909. But prior thereto, on August 13, 1909, the plaintiff

had made a contract with the C. E. Tayntor Granite Company for the construction of her mausoleum, according to plans which had been approved. She had, therefore, incurred the obligations of this contract, prior to the so-called adoption of the rule. Consequently the rule, if valid, would impair the obligation of her contract, and must be held illegal. Not even a by-law of a corporation can be held valid, which impairs the obligation of a stockholder's contract. Much less a rule or regulation of the board of managers be valid which has that effect.

We are therefore obliged to hold that there is no valid rule or regulation of the defendant, which will prohibit the location of plaintiff's mausoleum at the point where she desires to place it. In ruling, as we feel that we must, we in no way intend to reflect upon the management of the Homewood Cemetery. The board appears to have taken the action, of which the plaintiff complains, in good faith, with an earnest desire to have the cemetery improved in the proper manner, and with no intention of annoying the plaintiff or of interfering with what the board considered were her lawful rights. The work of the board has been most excellent, as anyone who ever looked at that beautiful cemetery must admit. If the board had adopted a proper rule upon the subject, the case would have required different action.

On the other hand, Mrs. Pitcairn is controlled by sentiments against the disturbance of the grave of her son-in-law and of regard for the feelings of her widowed daughter. These sentiments and feelings are entitled to respect and consideration. It is her duty to bury her dead. It is her right to do so in any way that is most suitable to her and most consonant with her feelings and affections. She may exercise that right in her own way, so long as she does not offend against any valid rule or regulation of the defendant; and we find that she has not done so.

Between these contentions, we are of opinion that the law is with the plaintiff and we must therefore so decide.

## CONCLUSIONS OF LAW.

1. The estate in the cemetery lot which vested in Robert Pitcairn by the deed of July 17, 1905, was an estate in fee, restricted as to alienation generally, and as to use and subject to the rules and regulations contained in said deed; and subject also to those which may be adopted in a lawful way.

2. By the will of said Robert Pitcairn, the estate which he had in said lot, by virtue of said deed, passed to his widow, the said Elizabeth E. Pitcairn, the plaintiff.

3. The plaintiff has the right to erect upon said lot any sepulcher not offensive or improper.

4. Nothing in the rules and regulations of the defendant, which are embodied in said deed of July 17, 1905, or which have been adopted since that time, authorizes the board of managers of the defendant to control the location of sepulchral structures upon said cemetery lot of the plaintiff.

5. The plaintiff has the right to locate said mausoleum at any point upon her lot, without giving any reasons for her action, but if her reasons be material, the reasons shown in this case are sufficient to justify her action in placing said mausoleum midway between the grave of V. Lee Crabbe, her son-in-law, and the westerly side of her lot.

6. The costs of this proceeding should be paid by the defendant.

Let a decree be drawn accordingly.

*Error assigned* was the decree of the court.

*Thomas Patterson,* of *Patterson, Sterrett & Acheson,* with him *Albert Bigelow Schultz,* for appellant.

*David A. Reed,* of *Reed, Smith, Shaw & Beal,* for appellee.

PER CURIAM, July 1, 1910:

The decree is affirmed at the cost of the appellant.